UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TAMAR BEN HAIM,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOHN DOE,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. 22-3536 (RBW)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

The plaintiff, Tamar Ben Haim, brings this civil action against the defendant, an unnamed employee of the United States Secret Service, asserting common law claims of assault and battery, and intentional infliction of emotional distress. <u>See</u> Complaint and Demand for Jury Trial ("Compl.") ¶¶ 27–34, ECF No. 1. Currently pending before the Court is the plaintiff's motion seeking "limited discovery prior to the Rule 26(f) conference . . . to learn the identity and address of [the d]efendant and to serve him with process." Plaintiff's Motion for Leave to Conduct Early Discovery ("Pl.'s Mot.") at 1, ECF No. 2. Upon careful consideration of the plaintiff's submissions,[1] the Court concludes for the following reasons that it will grant the plaintiff's motion.

      **I.**      **BACKGROUND**

The following allegations are taken from the plaintiff's Complaint, unless otherwise indicated.

---

[1] In addition to the filings already identified, the Court also considered the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Leave to Conduct Early Discovery ("Pl.'s Mem."), ECF No. 2-1, in rendering its decision.

"On the evening of July 12, 2022," Compl. ¶ 10, the plaintiff, "a female Israeli citizen, residing in Jerusalem, Israel[,]" id. ¶ 1, "was walking to her home in the Nachlaot neighborhood of Jerusalem, Israel[,]" id. ¶ 10. "As [the plaintiff] was walking, she was looking at her cellphone, reviewing and responding to text messages." Id. ¶ 11. "At approximately 1[:00 a.m., the plaintiff] lifted her head and saw [the d]efendant[,]" id. ¶ 12, allegedly an off-duty agent, see id. ¶ 21, "in the employ of the United States Secret Service who was a member of the . . . advance team preparing for President Jo[seph] Biden's visit to Israel in July [ ] 2022[,]" id. ¶ 19. The defendant "suddenly approached [the plaintiff] from the opposite direction of the alleyway[,]" id. ¶ 12, in which the plaintiff "was walking," id. ¶ 11. "Upon reaching [the plaintiff], [the d]efendant, suddenly and without warning, began to physically assault her[,] [ ] h[o]ld[ing her] tightly, hit[ting] her on her chest repeatedly, [and] slapp[ing] her, causing her earring and earphone to fall to the ground." Id. ¶ 13. The plaintiff "believed that [the d]efendant, who was armed with a handgun, intended to kill her[,]" id. ¶ 14, and although she "screamed for help, [it was] to no avail[,]" id. ¶ 15. "Finally, a[ second] individual who [was] with the d]efendant . . . but apparently took no part in the assault, forcefully removed [the d]efendant away from [the plaintiff]." Id. ¶ 16. The "[d]efendant then left the scene." Id.

After the plaintiff "called the Israeli police and filed a formal complaint[,]" id. ¶ 17, "the police took [the d]efendant into custody for several hours[,]" id. ¶ 18. "However, [the d]efendant was ultimately released and sent back to the United States." Id. On November 21, 2022, the plaintiff initiated this civil action, see id. at 6, and on November 22, 2022, the plaintiff filed her motion for limited discovery, see Pl.'s Mot. at 2.

## II.   ANALYSIS

The plaintiff asks the Court to permit early discovery "to learn the identity and address of [the d]efendant and to serve him with process[.]" Id. at 1.  Specifically, the plaintiff requests that the Court (1) "instruct the Clerk [of the Court] to sign and issue [a] subpoena" to "the United States Secret Service[,]" id., and (2) "sign and issue a Letter of Request . . . addressed to the Directorate of Courts in Israel, to obtain information from the Israeli police[,]" id. at 2.  The Court will address each of the plaintiff's requests in turn.

**A.   The Plaintiff's Request for the Issuance of a Subpoena to the Secret Service**

Pursuant to Federal Rule of Civil Procedure 26(d)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).  "In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve [his, her, or] its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the only potential avenue for discovery is [a court order under] Rule 26(d)(1).'" Goodwin v. District of Columbia, No. 21-cv-806 (BAH), 2021 WL 1978795, at *3 (D.D.C. May 18, 2021) (quoting Strike 3 Holdings, LLC v. Doe, 964 F.3d 1203, 1207 (D.C. Cir. 2020)) (second alteration in original).  "A district court's discretion to order discovery, whether before or after the parties have conferred, is cabined by Rule 26(b)'s general limitations on the scope of discovery," Strike 3 Holdings, 964 F.3d at 1207, which only permit discovery of nonprivileged materials that are "relevant to [the] party's claim or defense and proportional to the needs of the case[,]" Fed. R. Civ. P. 26(b)(1).[2]  Moreover, "when a plaintiff seeks [ ] discovery . . . regarding

---

[2] As the District of Columbia Circuit noted in Strike 3 Holdings, 964 F.3d 1203 (D.C. Cir. 2020),
(continued . . .)

unknown defendants[,]" the party must "'have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant[].'" AF Holdings, LLC v. Does 1–1058, 752 F.3d 990, 995 (D.C. Cir. 2014) (internal quotation marks omitted).

The Court will first address whether the plaintiff's request is "relevant to [the parties'] claim[s] or defense[s] and proportional to the needs of the case[,]" Fed. R. Civ. P. 26(b)(1), before turning to whether the plaintiff has "a good faith belief that [her requested] discovery will

---

(. . . continued)

>[p]rior to 2015, Rule 26(b) included a "good cause" standard for court-ordered discovery. See Fed. R. Civ. P. 26(b)(1) (2015) ("For good cause, the [C]ourt may order discovery of any matter relevant to the subject matter involved in the action."). The 2015 amendments to the [Federal] Rules [of Civil Procedure] eliminated Rule 26(b)'s good cause requirement and replaced it with the overarching relevance and proportionality standard[.]

964 F.3d at 1207 n.2. In Strike 3 Holdings, the district court "assumed [that] court-ordered discovery remain[ed] subject to a good cause requirement" and "analyze[d] good cause through the lens of the Second Circuit's Arista Records[, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010),] test." Id.; see also Arista Records, 604 F.3d at 119 (stating "that in the analysis of whether the qualified privilege requires that [a] subpoena be quashed, the principal factors include": (1) "the concreteness of the plaintiff's showing of a prima facie claim of actionable harm[;]" (2) "the specificity of the discovery request[;]" (3) "the absence of alternative means to obtain the subpoenaed information[;]" (4) "the need for the subpoenaed information to advance the claim[;]" and (5) "the objecting party's expectation of privacy") (alterations omitted)). On appeal, because the District of Columbia Circuit determined that "the district court's denial of Strike 3's Rule 26(d)(1) motion was an abuse of discretion under any applicable standard[,]" the Circuit declined to address either "whether the 'good cause' standard continues to apply under the current version of Rule 26[,]" or "whether Arista Records sets out an appropriate framework for analyzing [ ] motions [pursuant to Rule 26(d)(1).]" Strike 3 Holdings, 964 F.3d at 1207 n.2.

Here, in accordance with the Circuit's holding in Strike 3 Holdings, the Court concludes that the plaintiff's motion satisfies either the "relevant and proportional" or the "good cause" tests under Rule 26(b), and, therefore, the Court need not address whether "good cause" remains the pertinent standard for motions such as the plaintiff's. As an initial matter, the Court notes that the Arista Records test and the "relevance and proportionality" factors enumerated in Rule 26(b)(1) share several common components, including the importance of the information sought to the underlying case and the ability of the party to otherwise obtain the information. Compare Fed. R. Civ. P. 26(b)(1) (requiring courts to consider "the parties' relative access to relevant information" and "the importance of the discovery in resolving the issues"), with Arista Records, 604 F.3d at 119 (requiring courts to consider "the absence of alternative means to obtain the subpoenaed information" and "the need for the subpoenaed information to advance the claim"). And, as the Court determines below in regards to the "relevance and proportionality" test, the plaintiff has demonstrated that the information sought is (1) necessary to advance her underlying claims of assault and battery, and intentional infliction of emotional distress, and (2) inaccessible to the plaintiff absent a court order. See infra Section II.A.1. Thus, the Court concludes that the "good cause" factors weigh in favor of granting the plaintiff's request. Consequently, because the Court would grant the plaintiff's motion under either the "good cause" standard or the "relevance and proportionality" standard, the Court need not address whether the "good cause" standard still applies to motions under Rule 26(d)(1).

4

enable [her] to show that the [C]ourt has personal jurisdiction over the defendant[,]" AF Holdings, 752 F.3d at 995.

### 1. Rule 26(b)(1) Relevance and Proportionality Standard

The Court concludes that the information sought by the plaintiff falls squarely within the scope of Rule 26(b)(1). First, the plaintiff seeks "relevant information," Fed. R. Civ. P. 26(b)(1)—namely, "[t]he full name" and "current residential address[,]" Pl.'s Mot. at 1, of the individual whose alleged attack upon the plaintiff is at issue in this case, see id. at 2; Compl. ¶¶ 10–26. "Discovery to uncover an unnamed defendant is relevant when it is necessary and likely to reveal the defendant's identity[.]" Strike 3 Holdings, LLC v. Doe, Civil Action No. 1:23-cv-187, 2023 WL 2455680, at *2 (D.D.C. Mar. 10, 2023). Here, the plaintiff has demonstrated that the requested discovery is both "necessary and likely to reveal the defendant's identity[.]" Id. She has made significant, but unsuccessful, efforts to learn the defendant's name before seeking the Court's assistance, namely, (1) "fil[ing] a formal application under the Freedom of Information Act, 5 U.S.C. §[ ]552, with the Secret Service, seeking the name and address of [the d]efendant[,]" which "was denied on September 14, 2022[;]" and (2) "fil[ing] a request with the Israeli police, seeking information related to the identity and address of [the d]efendant[,]" which was also denied. Pl.'s Mem. at 4. Therefore, the plaintiff has demonstrated that the requested discovery is "necessary" to ascertain the defendant's identity. Strike 3, 2023 WL 2455680, at *2. Moreover, the information that she seeks—the defendant's "full name" and "current residential address[,]" Pl.'s Mot. at 1—is "likely to reveal the defendant's identity[,]" Strike 3, 2023 WL 2455680, at *2. Accordingly, the Court concludes that the requested discovery is "relevant information" under Rule 26(b)(1).

Second, the plaintiff's motion seeks information that is "proportional to the needs of [this] case[.]" Fed. R. Civ. P. 26(b)(1). Proportionality is assessed according to several factors,

including (1) "the importance of the issues at stake in the action[;]" (2) "the amount in controversy[;]" (3) "the parties' relative access to relevant information[;]" (4) "the parties' resources[;]" (5) "the importance of the discovery in resolving the issues" in the case; and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. The Court will examine each factor in turn.

First, "the issues at stake in th[is] action[,]" id., are important—both to the plaintiff, who alleges that she has suffered severe injuries as a result of the assault by the defendant, see Compl. ¶ 26 (alleging that the plaintiff "continues to suffer various forms of anxiety, depression[,] and fatigue"), and to the country's foreign relations, considering that the defendant is alleged to be "a member of the Secret Service advance team preparing for President [ ] Biden's visit to Israel[,]" id. ¶ 19,  who allegedly assaulted an "Israeli citizen[,]" id. ¶¶ 1, 13, while in Israel. See Id.  Accordingly, "[g]iven the . . . the scope of [the p]laintiff's allegations, the Court finds the importance of the issue to be sufficient" to merit the discovery of the defendant's name and address.  Strike 3, 2023 WL 2455680, at *5.

Second, "the amount[-]in[-]controversy[,]" Fed. R. Civ. P. 26(b)(1), in this case is at least $75,000, see Compl., Exhibit ("Ex.") 1 (Civil Cover Sheet) at 2, ECF No. 1-1.  In light of the highly limited nature of the plaintiff's requested discovery and the lack of any evidence that the cost of the requested discovery would be disproportionate to the amount-in-controversy, see generally Pl.'s Mem., the Court concludes that the amount-in-controversy does not weigh against granting the requested discovery.

Third, the plaintiff's "relative access to [the] relevant information[,]" Fed. R. Civ. P. 26(b)(1), weighs in favor of granting the plaintiff's request.  According to the plaintiff, she has undertaken multiple efforts to learn the defendant's name and address,

including "fil[ing] a formal application under the Freedom of Information Act, 5 U.S.C. §[ ]552, with the Secret Service," and "fil[ing] a request with the Israeli police[.]" Pl.'s Mem. at 4. However, none of these efforts have been successful. See id. (noting that both requests were "denied"). Therefore, absent intervention by the Court, the plaintiff has no further viable avenue by which she can seek to discover the defendant's name and address and, thus, no "access to relevant information[.]" Fed. R. Civ. P. 26(b)(1). Accordingly, the "asymmetry in access to [the] relevant information[,]" Strike 3 Holdings, LLC, Civil Action No. 20-03040 (RC/RMM), 2021 WL 3021459, at *6 (D.D.C. July 16, 2021), weighs in favor of granting the plaintiff's request.

Fourth, regarding the parties' resources, although the defendant's resources—like his identity—remain unknown, there is no evidence in the record demonstrating that discovery of the defendant's name and address would be prohibitively costly or disproportionate to the amount-in-controversy in this case. See generally Compl.; Pl.'s Mem. The plaintiff seeks only two pieces of information—the defendant's name and address—without which this case cannot proceed. Moreover, the limited nature of the information "appears to place [only] a minimal burden and expense" upon the Secret Service, "which need only search its records (presumably maintained electronically) to obtain the [ ] information[.]" Strike 3, 2021 WL 3021459, at *4. Thus, the Court concludes that the fourth factors weighs in favor of granting the plaintiff's request.

Regarding the fifth and sixth factors, the defendant's name and address are vitally "importan[t] . . . in resolving the issues" in the case. Fed. R. Civ. P. 26(b)(1). As the plaintiff correctly notes, "th[is] lawsuit cannot continue without first identifying the name and address of [the d]efendant." Pl.'s Mem. at 4. And, on the record currently before the Court, see generally

7

Compl.; Pl.'s Mem., there is no evidence that the "burden or expense" of discovery of the defendant's name and address would outweigh the information's "likely benefit[]" of enabling the plaintiff to proceed with her case.  Fed. R. Civ. P. 26(b)(1).  Consequently, the Court concludes that the fifth and sixth factors weigh in favor of granting the plaintiff's request.

Based on the assessment of the foregoing factors, the Court concludes that the information sought by the plaintiff is also "proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Accordingly, the Court determines that the information sought by the plaintiff is within the scope of discoverable information pursuant to Rule 26(b)(1).

### 2. "Good Faith Belief" that the Plaintiff's Requested Discovery Will Demonstrate that the Court Has Personal Jurisdiction over the Defendant

Next, the Court considers whether the plaintiff has demonstrated "'a good faith belief that [the] discovery [she seeks] will enable [her] to show that the [C]ourt has personal jurisdiction over the defendant[.]'"  AF Holdings, 752 F.3d at 995 (quoting Caribbean Broad. Sys., 148 F.3d at 1090).  "District of Columbia law provides for the exercise of personal jurisdiction over a person domiciled in the District of Columbia as to 'any claim for relief.'"  Malibu Media, LLC v. Doe, 177 F. Supp. 3d 554, 556 (D.D.C. 2016) (quoting D.C. Code § 13-422 ("A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his[, her,] or its principal place of business in, the District of Columbia as to any claim for relief.")).

Here, the plaintiff represents that, "according to several news outlets, [the d]efendant was a member of the Secret Service's Counter Assault Team, a specialized tactical unit that provides tactical support to the Presidential Protective Division to protect the President[.]"  Pl.'s Mem. at 5 (citing Whitney Wild, Secret Service member returns to US following altercation in Israel, CNN (July 13, 2022 7:08 a.m.), https://edition.cnn.com/2022/07/13/politics/secret-service-

8

israel/index.html ("A member of the US Secret Service Counter Assault Team was detained by the Israeli national police in Jerusalem this week after he allegedly assaulted a woman outside of a bar[.]")).  As the plaintiff correctly notes, see id., the Secret Service represents that assignments to the Counter Assault Team are "[l]ocated in the Washington, D.[]C. metropolitan area[.]" Career Path, U.S. Secret Serv., https://www.secretservice.gov/careers/special-agent/career-path (last visited Apr. 19, 2023).[3]  Therefore, the Court concludes that the plaintiff's allegations are sufficient to comprise a "'good faith belief that such discovery will enable [her] to show that the court has personal jurisdiction over the defendant[,]'" AF Holdings, 752 F.3d at 995 (quoting Caribbean Broad. Sys., 148 F.3d at 1090), as he is allegedly employed in the District of Columbia.[4]

Accordingly, the Court concludes that the plaintiff's request for a subpoena to the Secret Service should be granted.

**B.    The Plaintiff's Application for a Letter of Request**

The Court now turns to the plaintiff's application for a letter of request to the Directorate of Courts in Israel, asking that it direct the Israeli police to provide the plaintiff with the defendant's name and address, see Pl.'s Mem. at 6, which it is likely to possess as it "took [the d]efendant into custody for several hours" following the alleged assault, Compl. ¶ 18.  The

---

[3] This information appears on the Secret Service's official government website, of which the Court may, and does, take judicial notice.  See Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Hum. Servs., 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.").

[4] The Secret Service separately notes that assignments "to a Former President's Division . . . [are] outside the D[.]C[.] area." Career Path, U.S. Secret Serv., https://www.secretservice.gov/careers/special-agent/career-path (last visited Apr. 19, 2023).  However, the defendant was allegedly part of the President's detail, see Compl. ¶ 19, not a former President's detail.  Accordingly, the Court still concludes that the plaintiff has a good faith belief that the Court has personal jurisdiction over the defendant.

9

plaintiff submits her request pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention").  See Pl.'s Mem. at 6.

The Hague Evidence Convention "allows judicial authorities in one signatory country to obtain evidence located in another signatory country 'for use in judicial proceedings, commenced or contemplated.'"  Tulip Comput. Intern. B.V. v. Dell Comput. Corp., 254 F. Supp. 2d 469, 472 (quoting Hague Evidence Convention, art. 1, Oct. 7, 1972, 23 U.S.T. 2555, T.I.A.S. No. 7444 ("Hague Evidence Convention")).  Both the United States and Israel are signatories to the Hague Evidence Convention.  See Est. of Klieman v. Palestinian Auth., 272 F.R.D. 253, 255 (D.D.C. 2011); Hague Evidence Convention.  "[O]ne of the methods that the Hague Evidence Convention provides for taking evidence abroad is a letter of request from a U.S. judicial authority to the competent authority in the foreign signatory state."  McCarthy v. Johnson, No. 21-mc-4 (GMH), __ F. Supp. 3d __, 2022 WL 16834019, at *3 (D.D.C. Nov. 9, 2022).  Such letters "are typically used when the party from whom discovery is sought is 'beyond the jurisdiction' of the court and thus the party seeking the discovery is unable to take advantage of the discovery devices provided for in Rules 26 to 37 and 45."  Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 841 F. Supp. 2d 769, 781 (S.D.N.Y. 2012).

In "weighing [a] request[] for international discovery—even requests pursuant to the Hague [Evidence] Convention—courts should not overlook factors relevant to international comity."  Jaguar Land Rover Ltd. v. DR. ING. H.C. F. Porsche AG, No. 21-mc-62 (ZMF), 2021 WL 3075698, at *1 (D.D.C. June 22, 2021).  Specifically, courts should consider

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information

originated in the United States; [and] (4) the availability of alternative means of securing the information[.⁵]

Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa, 482 U.S. 522, 544 n.28 (1987). "Where the foreign state has agreed to the procedures of the Hague Evidence Convention, the first three factors are the most important." McCarthy, 2022 WL 16834019, at *3. Finally,

> [a]lthough the party seeking the discovery bears the burden of persuading the court that proceeding under the Hague Evidence Convention "is necessary and appropriate," the burden is not great . . . since the "Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention.

Id. (quoting In re Baycol Prods. Litig., 348 F. Supp. 2d 1058, 1059 (D. Minn. 2004)). The Court will address in turn the impact these first four factors have on the discovery requested by the plaintiff.

First, the Court must consider whether the information is of "importance to the . . . litigation[.]" Société Nationale, 428 U.S. at 544 n.28. As discussed above, see supra Section II.A.1, the information sought by the plaintiff—specifically, the defendant's name and

---

⁵ In Société Nationale, the Supreme Court also identified a fifth factor, namely, "the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa, 482 U.S. 522, 544 n.28 (1987). However, for signatories to the Hague Evidence Convention, the "'courts or other authorities of'" "'the state where the information is located'" are responsible for determining "'whether compliance with the request would undermine important interests of th[at] state[,]'" Jaguar Land Rover, 2021 WL 3075698, at *2 (quoting Restatement (Third) of Foreign Rels. Law § 473 n.5 (1987)), and, as part of this determination, "may limit enforcement of the discovery device where appropriate[,]" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 841 F. Supp. 2d 769, 794 (S.D.N.Y. 2012). Here, there is no proof that "noncompliance with the request would undermine important interests of the United States[.]" Société Nationale, 482 U.S. at 544 n.28.

Therefore, like other courts that have reviewed requests pursuant to the Hague Evidence Convention, the Court will not consider this fifth factor. See Jaguar Land Rover, 2021 WL 3075698, at *2 ("Finally, the Court will not assess the fifth factor because, '[w]hen a court orders resort to the [Hague] [Evidence] Convention[,] . . . it commits the issue whether compliance with the request would undermine important interests of the state where the information is located to the courts or other authorities of that state." (quoting (quoting Restatement (Third) of Foreign Rels. Law § 473 n.5 (1987)) (all but third alterations in original)); Lantheus Med. Imaging, 841 F. Supp. 2d at 794 ("Whether Canadian law would limit enforcement of the amended letters rogatory, in whole or in part, is a determination for the Ontario Court").

address, see Pl.'s Mot. at 1—is of extreme "importance to the . . . litigation[,]" Société Nationale, 482 U.S. at 544 n.28. Without access to the defendant's name and address, which the plaintiff has been unable to obtain without judicial assistance, see Pl.'s Mem. at 4 (representing that the plaintiff "filed a formal application under the Freedom of Information Act[,]" which "was denied[,]" and "filed a request with the Israeli police[,]" which "was denied"), she will be unable to prosecute her case. Therefore, the first factor weighs in favor of granting the plaintiff's discovery request.

Second, the Court must consider "the degree of specificity of the [plaintiff's] request." Société Nationale, 482 U.S. at 544 n.28. Here, the plaintiff's request is highly "specific[,]" id., as it seeks only "the full name and address of [the d]efendant[,]" Pl.'s Mem. at 8. Therefore, the second factor also weighs in favor of granting the plaintiff's request.

Third, the Court must consider "whether the information originated in the United States[.]" Société Nationale, 482 U.S. at 544 n.28. Here, although the plaintiff seeks information from the Israeli police, the information itself "originated in the United States[,]" id., because it concerns the name and address of a United States Secret Service agent. Secret Service agents must "[b]e [ ] U.S. [c]itizen[s,]" Qualifications for Special Agents, U.S. Secret Serv., https://www.secretservice.gov/careers/special-agent/qualifications#:~:text=To%20be%20considered%20for%20the,continue%20in%20the%20application%20process* (last visited Apr. 21, 2023),[6] and thus the plaintiff seeks to compel the Israeli police to provide information regarding an American citizen who is employed by the

---

[6] This information is taken from the Secret Service's official government website, of which the Court may; and does, take judicial notice. See Pharm. Rsch. & Mfrs. of Am., 43 F. Supp. 3d at 33 ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.").

United States federal government.  Therefore, the third factor also weighs in favor of granting the plaintiff's request.

Fourth, the Court must consider "the availability of alternative means of securing the information[.]"  Société Nationale, 482 U.S. at 544 n.28.  The plaintiff argues that the fourth factor weighs in favor of granting her request because "the Israeli police have notified [her] that the information being sought is not covered by Israel's Freedom of Information Law[,]" and therefore, "formal discovery is the exclusive mechanism to have the Israeli police provide the information sought."  Pl.'s Mem. at 9.  However, although the plaintiff may not be able to obtain this information from the Israeli police through other means, the fourth factor of Société Nationale asks whether there are "alternative means of securing the [underlying] information" sought by a request, not whether there are "alternative means of" getting the proposed recipient of the request to provide the information.  Société Nationale, 482 U.S. at 544 n.28.  Here, the information sought by the plaintiff from the Israeli police is the defendant's name and address, see Pl.'s Mot. at 1, and the Court has already granted the plaintiff's request to issue a subpoena to the Secret Service for that same information, see supra Section II.A.  Therefore, the plaintiff does have "alternative means [to] secur[e] the information[,]" Société Nationale, 482 U.S. at 544 n.28—namely the means that the Court has already approved.  Consequently, the Court concludes that there is an "alternative means of securing the information[,]" Société Nationale, 482 U.S. at 544 n.28, and thus the fourth factor weighs against granting the plaintiff's request.

In sum, all but the fourth Société Nationale factors weigh in favor of granting the plaintiff's request.  Because, as noted above, "[w]here the foreign state has agreed to the procedures of the Hague Evidence Convention, the first three factors are the most important[,]"

13

McCarthy, 2022 WL 16834019, at *3, the Court will grant the plaintiff's request, and authorize the sending of a letter of request to the Directorate of Courts in Israel.[7]

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the plaintiff's motion.

**SO ORDERED** this 7th day of July, 2023.[8]

REGGIE B. WALTON<br>
United States District Judge

---

[7] Although the plaintiff has attached a copy of the letter of request to her motion, see Pl.'s Mot., Exhibit ("Ex.") B (Letter of Request), ECF No. 2-3, the letter contains a typographical error in the "date" line of the fourth box, see id., Ex. B (Letter of Request) at 1 ("As soon a [sic] practicably possible").  Accordingly, the Court will instruct the plaintiff to file a corrected version of her letter of request within fourteen days.  Once the plaintiff has filed a corrected version, the Court will sign the letter.

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.